Anoush Hakimi (SBN 228858)
anoush@handslawgroup.com
Peter Shahriari (SBN 237074)
peter@handslawgroup.com
Ani Avetisyan (SBN 266679)
ani@handslawgroup.com
Laura Steven (SBN 332168)
laura@handslawgroup.com
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (888) 635-2250
Facsimile: (213) 402-2170

Attorneys for Plaintiff,
**SHAMAR JACKSON**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAMAR JACKSON, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>GOLDEN STATE ENTERPRISES LLC, a California Limited Liability Company; APRO, LLC, a Delaware limited liability company; and DOES 1-10,<br><br>        Defendants. | Case No. 2:20-cv-07191-ODW-JPR<br><br>Hon. Otis D. Wright, II<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181, *et seq.***<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Shamar Jackson (hereinafter referred to as "Plaintiff") complains of Defendants Golden State Enterprises LLC, a California Limited Liability Company; Apro LLC, a Delaware limited liability company; and Does 1-10 (each, individually a "Defendant," and collectively "Defendants"), and alleges as follows:

## I.    PARTIES

1.    Plaintiff Shamar Jackson suffers from limitations cause by an aortic heart valve repair and scoliosis in his spine. He has difficulty walking and getting around. He gets shortness of breath and limited range of movement in his lower and mid body. Exhaustion, light headedness, and heart murmur limit major life functions. Plaintiff is a disabled person entitled to the protections of the Americans with Disabilities Act (ADA) (*see* 42 U.S.C. § 12102, *et seq.*), and other statutory laws which protect the rights of "disabled persons."  Plaintiff has been issued a blue permanent Disabled Person Parking Placard, by the State of California.  Plaintiff is a California resident with physical disabilities.

2.    Defendant Golden State Enterprises LLC, a California Limited Liability Company, owned/owns the property (the "Property"), i.e., gas station, located at 3053 Los Feliz Blvd., Los Angeles, CA 90039.

3.    There is a business establishment on the Property named "76," (hereinafter, "the business").

4.    Defendant Apro, LLC, a Delaware limited liability company, is/was a

lessee of the Property, owns/owned the business named "76," and has/had control over its business at all relevant times.

5.     The business is a public accommodation as defined by 42 U.S.C. § 12181(7).

6.     DOES 1 through 10 were at all relevant times lessors, lessees, property owners, subsidiaries, parent companies, affiliates, employers, employees, agents, corporate officers, managers, principles, and/or representatives of Defendants. Plaintiff is unaware of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and, therefore, sues those Defendants by fictitious names.  Plaintiff requests that the Court grant leave to amend this complaint to allege the true names and capacities when determined by whatever source.

7.     Defendants, at all relevant times, were relevant to this action; were the owners, franchisees, franchisors, lessees, lessors, general partners, limited partners, agents, affiliates, employees, employers, representative partners, subsidiaries, partner companies, and/or joint venturers of the remaining Defendants; and were acting within the course and scope of that relationship.  Upon information and belief, Plaintiff alleges that each of the Defendants gave consent to, ratified, and/or authorized the acts alleged of each of the remaining Defendants.

8.     Plaintiff visited the public accommodations owned, leased, and/or operated by Defendants with the intent to purchase and/or use the goods, services,

FIRST AMENDED COMPLAINT

facilities, privileges, advantages, and/or accommodations offered by Defendants.

## II.    JURISDICTION & VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) & (a)(4) for violations of the ADA.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the real property which is the subject of this action is located in this district, and Plaintiff's cause of action arose in this district.

## III.    FACTS

11.    The Property is a facility which is open to the public and includes business establishments.

12.    The Property has been newly constructed and/or underwent remodeling, repairs, or alterations after January 26, 1992.  Defendants have failed to comply with the access standards which applied at the time of each new construction and/or alteration, and/or failed to maintain accessible features in operable working condition.

13.    Plaintiff visited the Property during the relevant statutory period on three (3) separate occasions, in January 2019, February 2020, and June 2020, to patronize the business on the Property.

14.    Defendants did not offer persons with disabilities with equivalent facilities, privileges, and advantages offered by Defendants to other patrons.

15.    Plaintiff encountered barriers, both physical and intangible, that

4

interfered with, and denied, Plaintiff the ability to use and enjoy the goods, services, privileges, and/or accommodations offered at the Property.

16.    Parking is one of the facilities, privileges, and advantages offered by Defendants to patrons of the Property.

17.    However, there was no accessible parking for disabled patrons at the Property.  The parking space designated for disabled persons did not comply with the ADA.

18.    The parking area did not comply with the applicable ADA Standards for Design and/or the applicable California Building Code (CBC).

19.    When Plaintiff visited the Property, he experienced access barriers related to parking, signage, and path(s) of travel.

20.    Plaintiff encountered the following barriers, conditions, and/or violations at the Property:

**VIOLATION of 2010 ADAS § 502.3.3; 2010 CBC § 1129B.3.1; 2019 CBC § 11B-502.3.3.**  (<u>"NO PARKING" – ground surface signage.</u>)  The words "NO PARKING," which are required to be painted in the loading/unloading access aisle, were missing (and/or were completely faded such that the words were no longer visible).  As a result, non-disabled patrons parked in the loading/unloading access aisle, blocking Plaintiff from being able to

use the access aisle.  Plaintiff needs extra space to be able to safely exit his

vehicle. Plaintiff has difficulty disembarking his vehicle, which poses a

greater risk of injury to him and can cause him humiliation and/or frustration.

Plaintiff cannot access the Property safely if he cannot use an accessible

parking space and adjacent access aisle.

**VIOLATION of 1991 ADAS § 4.6.4; 2010 ADAS § 502.6; 2010 CBC §**

**1129B.4; 2019 CBC § 11B-502.6.**  (Sign missing – accessible parking

space.)  The sign identifying the designated disabled parking space was

missing.  Plaintiff has difficulty walking and needs to park in the space that is

nearest to the building/business entrance and designated for disabled patrons.

Plaintiff needs to be able to use an accessible parking space, with an access

aisle, to safely access the Property. Clear signage will (better) deter others

without disabilities from parking in the space; and will thus decrease the

chances that he will be blocked from being able to use it.

**VIOLATION of 1991 ADAS § 4.6.4; 2010 CBC § 1129B.4; 2019 CBC §**

**11B-502.6.3.**  (Sign improperly located.)  A designated disabled parking

space identification sign shall be visible from each designated disabled

parking space.  Signs shall be permanently posted either immediately

adjacent to the parking space, or within the projected parking space width at the head end of the parking space.  Here, the sign is located off to the side of the designated disabled parking space. This made it difficult for Plaintiff and other patrons to identify or locate the designated disabled parking space. Plaintiff has difficulty walking and needs to park in the space that is nearest to the building/business entrance and designated for disabled patrons. Plaintiff needs to be able to use an accessible parking space, with an access aisle, to safely access the Property.  A properly placed designated disabled parking space identification sign will (better) deter others without disabilities from parking in the space; and will thus decrease the chances that he will be blocked from being able to use it.

**VIOLATION of 2010 CBC § 1129B.4; 2019 CBC § 11B-502.6.4.**

(Parking space ground surface signage.)  The paint used for the designated disabled parking space was faded and could not (could hardly) be seen; thus, there was no compliant surface signage at the designated disabled parking space.  The International Symbol of Accessibility was so faded and worn that it could hardly be seen. This made it difficult for Plaintiff and other patrons to identify or locate the designated disabled parking space.  When the paint for the International Symbol of Accessibility is so faded and worn,

there is a greater risk that non-disabled patrons will park in the designated

disabled parking spaces, preventing Plaintiff from using it and accessing the

business.  Plaintiff has difficulty walking and needs to be able to park in the

space for designated disabled persons, that are nearest to the

building/business entrance and/or service facilities.  Plaintiff needs to be

able to use an accessible parking space, with an access aisle, to safely access

the Property.  Clear surface signage that explicitly marks the designated

disabled parking spaces will deter others without disabilities from parking in

the space, so that the space can be available for Plaintiff's use.


**VIOLATION of 2010 ADAS §§ 206.1, 206.2, 206.2.1, 206.2.2, 206.2.4; 2010 CBC § 1127B.1; 2019 CBC §§ 11B-206.2.1, 11B-206.2.2, 11B-206.2.4.**  (Path of travel into building entrances.)  There is no accessible path

of travel into the building entrance.  Plaintiff has difficulty walking and

needs a dedicated path of travel, free of obstructions and vehicles. It is

dangerous for Plaintiff to navigate without a safe, protected, accessible path

of travel; thus, the violation interferes with Plaintiff's ability to fully access

the premises.

FIRST AMENDED COMPLAINT

**VIOLATION of 1991 ADAS § 4.1.2(7); 2010 ADAS § 216.6; 2010 CBC § 1127B.3; 2019 CBC § 11B-216.6.**  (Directional signage.)  There is no directional signage showing an accessible path of travel to an accessible entrance.  Plaintiff has difficulty walking and faces an increased risk of injury if he is required to backtrack because he cannot find an accessible entrance into the business/building.  Thus, he requires clear signage directing him to any accessible entrance(s).  Accessible entrances should be marked with an International Symbol of Accessibility.

**VIOLATION of 2010 CBC § 1133B.7.1.** (Walks/sidewalks minimum width.) The walk into the business does not have a minimum width of forty-eight inches (48"). Plaintiff has difficulty walking and needs extra space to be able to safely access the business.

**VIOLATION of 1991 ADAS § 4.3.2(1); 2010 ADAS § 206.2.1; 2010 CBC § 1114B.1.2; 2019 CBC § 11B-206.2.1.**  (Exterior route of travel.)  An accessible route of travel is not provided to all entrances and portions of the building, to all entrances of the Property, and/or between the building and a public way.  Plaintiff has difficulty walking and needs a dedicated path of travel, free of obstructions and vehicles, where (on which) he can travel.  It is

dangerous for Plaintiff to navigate without a safe, protected, accessible route of travel; thus, the violation interferes with Plaintiff's ability to fully access the premises.

**VIOLATION of 1991 ADAS §§ 4.5.2, 4.6.8; 2010 ADAS §§ 302.1, 303.1, 303.2, 303.3, 303.4; 2010 CBC §§ 1120B.2, 1133 B.7.1, 1133B.7.4; 2019 CBC §§ 11B-303.1, 11B-303.2, 11B-303.3, 11B-303.4, 11B-303.5.** <u>(Abrupt changes in level; uneven ground surface.)</u> Floor and ground surfaces shall be stable, firm, and slip resistant. Changes in level of 1/4 inch high maximum shall be permitted to be vertical and without edge treatment. Changes in level between 1/4-inch high minimum and 1/2-inch high maximum shall be beveled with a slope not steeper than 1:2. Changes in level greater than 1/2 inch high shall be ramped. The route of travel, including from the designated disabled parking space to the entrance of the building/business, and from and between the service facilities on the Property (i.e., gas pumps and air/water machine), have an uneven ground surface with changes in level exceeding one-half inch (1/2") (and no ramps are provided). The route of travel has damaged ground which is not flush or flat. The ground has pavement distresses. The types of pavement distresses which exist include but are not limited to: alligator (fatigue) cracking; joint reflection cracking; potholes;

FIRST AMENDED COMPLAINT

asphalt bleeding; patching near utilities; block cracking; raveling; stripping; corrugation and shoving; and depressions.  These pavement distresses are made worse and exacerbated by design elements which do not follow the ADAAG.  These areas should be fixed immediately because they pose a tripping and/or falling hazard.  Plaintiff has difficulty walking and cannot safely and fully enjoy the premises when such conditions are present.  These excess changes in level and uneven ground surfaces pose risks to Plaintiff, including that his feet, may catch on the uneven ground causing him to fall. These abrupt changes in level pose an increased risk of danger to Plaintiff, as he is more likely to trip/fall than someone without disabilities.  The excess changes in level (i.e., uneven ground) denied Plaintiff full and equal use or access during each of his visits by making it difficult/harder and more dangerous for him to traverse the property/route. The excess changes in level (i.e., uneven ground) also deterred/deters Plaintiff from visiting the Property because it would be difficult/harder and more dangerous for Plaintiff to traverse the property/route.

FIRST AMENDED COMPLAINT

**VIOLATION of 1991 ADAS §§ 4.1.2(1), 4.3.2(1); 2010 ADAS §§ 206.1, 206.2, 206.2.1, 206.2.2, 206.2.4; 2010 CBC § 1114B.1.2; 2010 CBC § 1127B.1; 2019 CBC §§ 11B-206.2.1, 11B-206.2.2, 11B-206.2.4.**

(Accessible route of travel.)  At least one accessible route shall be provided within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve.  At least one accessible route shall connect accessible buildings, accessible facilities, accessible elements, and accessible spaces that are on the same site.  The requisite accessible route of travel is not provided.  There is no accessible route of travel from the designated disabled parking spaces, adjacent access aisle to the business/building entrance, and from and around the service facilities on the Property.  Plaintiff has difficulty walking and needs an accessible route of travel, with level and smooth ground, free of obstructions and vehicles, whereupon he can ambulate.  It is dangerous for Plaintiff to travel these areas without a safe, protected, accessible route of travel; thus, the violation interferes with Plaintiff's ability to fully access the premises.  The lack of a safe and accessible route, with a smooth and level surface, denied Plaintiff full and equal use or access during each of his visits by making it difficult/ harder for him to traverse.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.2.; 2010 CBC §§ 1129B.3, 1129B.4; 2019 CBC §§ 11B-502.2, 11B-502.6.4.1, 502.6.4.2.**

(Faded paint – accessible parking space lines.)  The paint used for the designated disabled parking spaces was so worn and aged that it could not (could hardly) be seen. Plaintiff needs to be able to use the designated disabled parking space, which should be located closest to the entrance and linked to an accessible route of travel, because it is more difficult for him, as opposed to individuals, to maneuver about the Property.  When the paint for the designated disabled parking spaces is worn and aged, there is a greater risk that non-disabled patrons will park in the designated disabled parking spaces, preventing Plaintiff from using them and accessing the business.

**VIOLATION of 2010 CBC § 1129B.1; 1991 ADAS § 4.6.2; 2010 ADAS § 208.3.1.**  (Minimize travel distance.)  The parking space reserved for disabled persons is not located to minimize the travel distance to the business/building's entrance.  Plaintiff has difficulty walking, so it is difficult for him to travel for long distances.  Plaintiff requires parking closest to the building entrances to minimize travel distance.

21.     Plaintiff personally encountered the foregoing barriers, conditions, and/or violations.

22.     These barriers, conditions, and/or violations denied Plaintiff full and equal access, and caused him difficulty, humiliation, and/or frustration.

23.     The barriers, conditions, and/or violations existed during each of Plaintiff's visits in January 2019, February 2020, and June 2020.

24.     Furthermore, although Plaintiff did not personally encounter all of the following barriers, conditions, and/or violations, Plaintiff is informed that the following barriers, conditions, and/or violations, which affect access for disabled persons like him, remain at the Property:

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.4; 2016 CBC §§ 11B-502.4, 11B-502.3.3; 2010 CBC § 1129B.3.4.** (Slope of designated disabled parking space.) The designated disabled parking space has slopes and cross slopes that are greater than two percent (2%). Plaintiff needs to be able to traverse on a level surface. Sloped ground surfaces pose risks to Plaintiff, including that his feet may catch on the sloped ground, causing him to fall.

FIRST AMENDED COMPLAINT

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.4; 2010 CBC § 1129B.3.3; 2019 CBC § 11B-502.4.** (Slopes of adjacent access aisle.)  The loading/unloading access aisle (adjacent to the designated disabled parking space) has surface slopes greater than two percent (2%). Plaintiff needs to be able to traverse on a level surface.  Sloped ground surfaces pose risks to Plaintiff, including that his feet may catch on the sloped ground, causing him to fall.

**VIOLATION of 1991 ADAS §§ 4.3.7, 4.8.1; 4.8.4(2), 4.8.4(3); 2010 ADAS § 403.3; 2010 CBC §§ 1133B.5.4.2, 1133B.5.4.6; 2019 CBC § 11B-403.3.** (Excess slopes; no compliant ramp.)  The route(s) of travel has/have slopes greater than 1:20 (5%), but there is no compliant ramp (with appropriate level ramp landings at the top and bottom of each ramp).  It is difficult for Plaintiff to walk on sloped surfaces that do not provide the safety features of a compliant ramp.  These excess changes in level pose risks to Plaintiff, including that he may fall.  Plaintiff has difficulty walking on excess slopes. The lack of a complaint ramp, with its attendant safety/accessibility features, denied Plaintiff full and equal use or access during his visits by making it difficult/harder for him to traverse the property/route.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.3; 2010 CBC § 1129B.3; 2019 CBC § 11B-502.3.**  (Access aisle adjoining accessible route.) The adjacent loading/unloading access aisle must adjoin an accessible route to an accessible entrance.  It does not.  Plaintiff cannot access the Property safely unless there is an access aisle onto which he can disembark from the vehicle. The access aisle must lead to an accessible route, so that he can safely travel to and enter the business/building entrance.  There is no safe route of travel from the designated disabled parking space to the business/building entrance.  The barrier deters Plaintiff from visiting the property because the lack of a safe and accessible route would make it difficult, uncomfortable, and/or unsafe for Plaintiff to walk around the property, including to travel from the designated disabled parking space to the building entrance.

**VIOLATION of 2010 ADAS § 403.3; 2019 CBC § 11B-403.3.** (Route/path of travel – cross slopes.)  The cross slopes of the route/path of travel from the designated disabled parking space, and/or between and from the service facilities to the business/building entrance, are greater than two percent (2%).  It is difficult for Plaintiff to walk on surfaces with excess slopes.  Plaintiff has difficulty walking and is at risk of falling when there

are surfaces with excess slopes.  The presence of excess slopes denied Plaintiff full and equal use or access during his visits by making it difficult and/or uncomfortable for him to walk/traverse the property/route.  The barrier also deters Plaintiff from visiting the Property because it would make it difficult and/or uncomfortable for Plaintiff to walk/traverse the property/route.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.3.2; 2010 CBC § 1129B.3; 2019 CBC § 11B-502.3.2.**  <u>(Length of adjacent access aisle.)</u>  The access aisle adjacent to the designated disabled parking space is/was less than eighteen feet (18') long (which is also the required length of the designated disabled parking space), which would deny plaintiff full and equal use and access of the full length of the required access aisle.  Plaintiff needs extra space to be able to safely exit his vehicle. When the access aisle is too small, Plaintiff has difficulty disembarking from his vehicle, which poses a greater risk of injury to him and can also cause him humiliation and/or frustration.

**VIOLATION of 2010 ADAS § 502.2; 2010 CBC § 1129B.3; 2019 CBC § 11B-502.2.**  <u>(Length of designated disabled parking space.)</u>  The designated disabled parking space measures/measured less than eighteen feet (18') long,

which would make it difficult for Plaintiff to use the designated space, and which would deny Plaintiff full and equal use and access of the full length of the required space. Plaintiff cannot safely park and disembark from his vehicle when adequate space is not provided.  Plaintiff needs to be able to use the designated disabled parking space, which should be located closest to the entrance and linked to an accessible route of travel, because it is more difficult for him, as opposed to individuals, to maneuver about the Property.

**VIOLATION of 1991 ADAS § 4.29.5; 2010 CBC § 1133B.8.5; 2019 CBC § 11B-247.1.2.5.**  Hazardous Vehicular Area.)  The path of travel crosses a vehicular way (from and between the service facilities to the business/building entrance), but the walking surface is not separated by curbs, railings, or a continuous detectable warning. There is no safe way for Plaintiff to travel from and between the service facilities to the business/building entrance). Plaintiff is forced to travel a dangerous route, behind parked cars and in the vehicle drive path, to move from and between the service facilities to the business entrance.  Plaintiff has difficulty walking and faces an increased risk of injury if he has to travel in the path of vehicles because it is more difficult for drivers to see him, and he cannot quickly move out of the way of an oncoming vehicle.  Thus, he requires a safe path

away from other vehicles.  The safe, accessible path must be clearly marked so that he can find it.

**VIOLATION of 2010 CBC § 1133B.7.1; 1991 § ADAS § 4.3.8.**  (Walks/ sidewalks – changes in level.)  The walk leading into the business does not have a continuous common surface because there are abrupt changes in level of more than one-half inch (1/2").  Plaintiff cannot fully enjoy the premises because these conditions pose a risk that, among other things, he may and/or that his foot may become trapped in an uneven surface.

**VIOLATION of 1991 ADAS § 4.5.3; 2010 ADAS § 302.2; 2010 CBC § 1124B.3; 2019 CBC § 11B-302.2.** (Carpet.) Carpets and mats must be securely attached to a stable surface. The mats, covering the manhole covers and in front of the main transaction counter, are not securely attached, which can cause rolling and buckling, making maneuvering more difficult. feet can easily catch on unsecured mats and/or carpets, causing him to trip.

25.     Defendants knew that the foregoing architectural barriers prevented access.  Plaintiff will prove that Defendants had actual knowledge that the architectural barriers prevented access, and that the noncompliance with the ADA

Standards for Accessible Design (ADAS), ADA Accessibility Guidelines for Buildings and Facilities (ADAAG), and/or the California Building Code (CBC) was intentional.

26.     Plaintiff intends and plans to visit the Property again soon.  Currently, Plaintiff is reasonably deterred from returning to Defendants' public accommodation facilities because of the knowledge of barriers to equal access, relating to Plaintiff's disabilities, that continue to exist at the Property.

27.     Defendants have failed to maintain in working and useable condition those features necessary to provide ready access to persons with disabilities.

28.     Defendants have the financial resources (i.e., financial ability) to remove these barriers without much expense or difficulty in order to make the Property more accessible to their mobility impaired customers (i.e., disabled persons).  The removal of these barriers is readily achievable.  The United States Department of Justice has determined that removal of these types of barriers is readily achievable.

29.     Defendants refuse to remove these barriers.

30.     On information and belief, Plaintiff alleges that Defendants' failure to remove these barriers was/is intentional, because the barriers are logical and obvious.  During all relevant times, Defendants had authority, control, and dominion over these conditions.  Thus, the absence of accessible facilities was/is

FIRST AMENDED COMPLAINT

not a mishap; it was/is the result of intentional actions or inaction.

31.     These barriers to access are described herein without prejudice to Plaintiff citing additional barriers to access after further inspection by Plaintiff's agents and/or experts.  *See Doran v 7-ELEVEN, Inc.,* 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, a plaintiff can sue to have all barriers that relate to his or her disability removed, regardless of whether he or she personally encountered them).

### IV.   VIOLATION OF THE AMERICANS
### WITH DISABILITIES ACT OF 1990
### (42 U.S.C. § 12101, *et seq*.)

(Against All Defendants)

32.     Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

33.     Title III of the ADA prohibits discrimination against any person on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation.  42 U.S.C. § 12182(a).

34.     Defendants discriminated against Plaintiff by denying him "full and equal enjoyment" and use of the goods, services, facilities, privileges, and/or

accommodations they offered during each visit, and each incident of a deterred

visit.

35.   The acts and omissions of Defendants herein were/are in violation of

Plaintiff's rights under the ADA and the regulations codified at 28 C.F.R. Part 36,

*et seq.*

36.   Pursuant to the ADA, discrimination is a "failure to make reasonable

modifications in policies, practices or procedures, when such modifications are

necessary to afford goods, services, facilities, privileges, advantages or

accommodations to individuals with disabilities, unless the entity can demonstrate

that making such modifications would fundamentally alter the nature of such goods,

services, facilities, privileges, advantages or accommodations."  42 U.S.C. §

12182(b)(2)(A)(ii).

37.   The ADA requires removal of architectural barriers in existing

facilities where such removal is readily achievable.  42 U.S.C. § 12182(b)(2)(A)(iv)

("discrimination includes … a failure to remove architectural barriers, and

communication barriers that are structural in nature, in existing facilities, … where

such removal is readily achievable").  The term "readily achievable" is defined as

"easily accomplishable and able to be carried out without much difficulty or

expense."  42 U.S.C. § 12181(9).  Barriers are defined by reference to the ADA

Standards for Accessible Design (ADAS), found at 28 C.F.R. Part 36, including the

FIRST AMENDED COMPLAINT

ADA Accessibility Guidelines for Buildings and Facilities (ADAAG), at 28 C.F.R. Part 36, Appendix A.

38.     If removal of any barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also prohibited if the alternative methods are readily achievable.  42 U.S.C. § 12182(b)(2)(A)(v).

39.     Defendants can remove the architectural barriers at their facility without much difficulty or expense.  Defendants violated the ADA by failing to remove the barriers because removal was readily achievable.  For instance, there are companies which can repaint parking areas for as little as $350.  Defendants can afford such costs, which are a fraction of what Defendants receive in (rental or business) profits in connection with such a large and expensive property.

40.     Alternatively, if it was not "readily achievable" for Defendants to remove barriers at their facilities, Defendants violated the ADA by failing to make their services available through alternative methods which are readily achievable.

41.     On information and belief, Plaintiff alleges that the facility was altered after January 26, 1992, mandating compliance with accessibility requirements under the ADA.

42.     The ADA requires that facilities altered in a manner that affects or could affect their usability must be made readily accessible to individuals with

disabilities to the maximum extent feasible.  42 U.S.C. § 12183(a)(2).

43.     Defendants altered the facilities at the Property in a manner that violated the ADA, and/or failed to make the Property readily accessible to physically disabled persons to the maximum extent feasible.

44.     The ADA also requires reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.  42 U.S.C. § 12182(b)(2)(A)(ii).

45.     Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Property when these modifications were necessary to afford (and would not fundamentally alter the nature of) the goods, services, facilities, privileges, advantages, or accommodations.

46.     Here Defendants' failure to make sure that accessible facilities were available to, and ready to be used by, Plaintiff was/is a violation of law.

47.     Plaintiff would like to continue to frequent the Property, which is close to his home.  However, he is deterred from doing so because he has been discriminated against and is aware of accessibility barriers at the Property.

48.     Among the remedies sought, Plaintiff seeks an injunction order

FIRST AMENDED COMPLAINT

requiring compliance with the ADA, and remediation of the existing access

violations (i.e., removal of the existing barriers) at the Property.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1.  For injunctive relief compelling Defendants to comply with the
    Americans with Disabilities Act and remove access barriers (i.e.,
    remediate violations) at the Property/business/facility.

2.  Reasonable attorney fees, litigation expenses, and costs of suit, pursuant
    to 42 U.S.C. § 12205.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


Dated: March 19, 2021               THE LAW OFFICE OF HAKIMI & SHAHRIARI


                                    By:   /s/ Anoush Hakimi
                                          ANOUSH HAKIMI, ESQ.
                                          Attorney for Plaintiff Shamar Jackson

FIRST AMENDED COMPLAINT